

## Office of the Attorney General
### State of Texas
December 21, 1998

**DAN MORALES**
ATTORNEY GENERAL

Mr. Tom Treadway
Executive Director
General Services Commission
P.O. Box 13047
Austin, Texas 78711-3047

Opinion No. DM-496

Re: Whether the Texas Council on Purchasing from People with Disabilities mandatory purchasing program conflicts with procedures governing the purchase of automated information systems set forth in chapter 2157 of the Government Code (RQ-1145)

Dear Mr. Treadway:

You ask about the relationship between the Texas Council on Purchasing from People with Disabilities (the "council") mandatory purchasing program set forth in Human Resources Code chapter 122 and procedures governing the purchase of automated information systems set forth in Government Code chapter 2157. You ask, in essence, whether the two statutory schemes conflict with respect to state agency computer purchases.[1] We agree with your assessment that the two statutory schemes conflict with respect to state agency purchases of automated information systems and conclude that chapter 2157, the more specific provision, prevails to the extent of conflict. The General Services Commission ("GSC" or "commission") or other state agency is precluded from purchasing an automated information system except in compliance with chapter 2157.

We begin with a review of the two statutory schemes. Human Resources Code chapter 122 is intended in part to "further the state's policy of encouraging and assisting persons with disabilities to achieve maximum personal independence by engaging in useful and productive employment activities."[2] The council is authorized to approve community rehabilitation programs under which persons with disabilities produce goods or perform services for compensation.[3] The council is charged with determining the fair market value of products and services manufactured or provided by persons with disabilities and offered for sale to state agencies by community rehabilitation

---

[1]Our analysis is limited to purchases by those state agencies that are required to comply with chapter 2157. *See* Gov't Code § 2157.002. You do not ask about and we do not address purchases by political subdivisions. *See generally* Attorney General Opinion DM-350 (1995) (addressing political subdivision's participation in catalogue purchasing); *see also* note 37 *infra*. In addition, you do not ask about and we do not address federal law.

[2]Hum. Res. Code § 122.001.

[3]*See id.* §§ 122.002(3) (defining "community rehabilitation program"), .003(j) (council authority to approve programs).

programs.[4] The council must also "ensure that the products and services offered for sale offer the best value for the state."[5] Before offering them for sale to state agencies, the council must test goods and services to the extent necessary to ensure quality.[6]

Significantly, chapter 122 requires a state agency to purchase products and services from a community rehabilitation program over other sources in the following circumstances: "A suitable product or service that meets applicable specifications established by the state . . . and that is available within the time specified must be procured from a community rehabilitation program at the price determined by the council to be the fair market price."[7] Section 122.016 permits exceptions to this purchasing mandate[8] in any case where:

> (1) under the rules of the [GSC], the product or service so produced or provided does not meet the reasonable requirements of the office, department, institution, or agency; or
>
> (2) the requisitions made cannot be reasonably complied with through provision of products or services produced by persons with disabilities.[9]

The exception provision also includes the following limitation:

> No office, department, institution, or agency may evade the intent of this section by slight variations from standards adopted by the commission, when

---

[4]*Id.* §§ 122.007(a), .015 (factors to be considered in determining fair market value).

[5]*Id.* § 122.007(a).

[6]*Id.* § 122.007(d).

[7]*Id.* § 122.008.

[8]Section 122.016 refers to the "mandatory provisions of Section 122.014." *Id.* § 122.016(a). Section 122.014, however, contains provisions regarding product specifications. We believe that section 122.016 should refer to the mandatory purchasing provisions in section 122.008. The legislative history supports this conclusion. The exceptions provision was enacted as House Bill 2071 in 1979 as an amendment to former article 664-5. The exceptions provision referred to "the mandatory provisions of Section 4." *See* Act of May 26, 1979, 66th Leg., R.S., ch. 803, § 6 (amending former V.T.C.S. art. 664-5, § 4a), 1979 Tex. Gen. Laws 2049, 2051. Section 4 of former article 664-5 contained the mandatory purchasing language now found in Human Resources Code section 122.008. *See id.* § 5 (amending former V.T.C.S. art. 664-5, § 4).

[9]Hum. Res. Code § 122.016(a). Subsection (b) of section 122.016 requires the GSC to provide the council with a list of all items purchased under the exception provided by subsection (a) on a monthly basis. "The council shall adopt the form in which the list is to be provided and may require the list to include the date of requisition, the type of product or service requested, the reason for purchase under the exception, and any other information that the council considers relevant to a determination of why the product or service was not purchased in accordance with [the mandatory purchasing provisions.]" *Id.* § 122.016(b).

the products or services produced or provided by persons with disabilities, in accordance with established standards, are reasonably adapted to the actual needs of the office, department, institution, or agency.[10]

Apparently a community rehabilitation program has asked the council to approve personal computers manufactured by the program for the mandatory purchasing program. The GSC, which provides assistance to the council[11] and also oversees state purchasing,[12] is concerned that a personal computer set-aside would conflict with Government Code chapter 2157.

Chapter 2157 of the Government Code governs the purchase of "automated information systems," which it defines to include both:

> (A)   the computers on which the information system is automated; [and]
>
> (B)   a service related to the automation of the system, including computer software, or the computers.[13]

Chapter 2157 establishes a procedure whereby the GSC and state agencies may purchase automated information systems from "qualified information systems vendors," vendors authorized by the GSC to publish a catalogue of products and services that may be directly purchased by a state agency.[14] Vendors apply to the GSC for this designation.[15] In qualifying vendors, the GSC is required to consider:

> (1) a vendor's ability to provide adequate and reliable support and maintenance;
>
> (2) a vendor's ability to provide adequate and reliable support and maintenance in the future;
>
> (3) the technical adequacy and reliability of a vendor's products; and

---

[10]*Id.* § 122.016(c).

[11]*Id.* § 122.012(a) (requiring GSC to provide legal, clerical, administrative, and other necessary support to the council).

[12]*See* Gov't Code §§ 2155.002, .061.

[13]*Id.* § 2157.001(1).

[14]*Id.* § 2157.001(2).

[15]*Id.* § 2157.062.

(4) standards adopted by the Department of Information Resources.[16]

Chapter 2157 provides that "[t]he [GSC] or a state agency shall purchase an automated information system through the catalogue procedure provided by this subchapter unless the commission or state agency determines that the best value may be obtained from another purchase method authorized by this subtitle."[17] Chapter 2157 also mandates that

> [a] catalogue purchase or lease shall, when possible, be based on an evaluation of at least three catalogue proposals made to the [GSC] or other state agency by qualified information systems vendors. If at least three catalogue proposals are not evaluated by the [GSC] or other state agency before the purchase or lease is made, the [GSC] or other agency shall document the reasons for that fact before making the purchase or lease under Section 2157.063.[18]

For purposes of chapter 2157, "best value" is defined to mean "the lowest overall cost of an automated information system."[19] In determining the lowest overall cost for a purchase or lease of an automated information system under this chapter, the GSC or a state agency is required to consider factors including:

(1) the purchase price;

(2) the compatibility to facilitate the exchange of existing data;

(3) the capacity for expanding and upgrading to more advanced levels of technology;

(4) quantitative reliability factors;

(5) the level of training required to bring persons using the system to a stated level of proficiency;

(6) the technical support requirements for the maintenance of data across a network platform and the management of the network's hardware and software;

---

[16]*Id.* § 2157.065.

[17]*Id.* § 2157.061.

[18]*Id.* § 2157.0611.

[19]*Id.* § 2157.003.

(7) the compliance with applicable Department of Information Resources statewide standards validated by criteria adopted by the department by rule; and

(8) applicable factors listed in Sections 2155.074 [which sets forth best value factors][20] and 2155.075 [which requires the commission or state agency to specify "best value" factors in seeking competitive bids and competitive sealed proposals].[21]

Chapter 2157 refers to the Department of Information Resources ("DIR"), the state agency charged with coordinating information resources management within state government.[22] The GSC is required, for example, to take into account DIR standards in qualifying vendors.[23] The GSC or a state agency purchasing an automated information system is also required to take into account DIR standards in determining whether a system is the "best value."[24] The DIR has issued standards on items such as geographic information systems, information security, and data transport networks.[25]

---

[20]Text of section 2155.074 concerning best value standards added by Act of May 28, 1997, 75th Leg., R.S., ch. 1206, § 6, 1997 Tex. Gen. Laws 4632, 4634.

[21]Gov't Code § 2157.003 (footnote added). In addition, a state agency is authorized to purchase or lease an automated information system directly from a qualified vendor if the purchase or lease is both the best value available and "in the state's best interest." *Id.* § 2157.063(a). In determining whether goods or services are in the state's best interest, the agency is required to consider:

> (1) the installation and hardware costs;
>
> (2) the overall life-cycle cost of the system or equipment;
>
> (3) the estimated cost of employee training and estimated increase in employee productivity;
>
> (4) the estimated software and maintenance costs; and
>
> (5) *the rules that prescribe applicable statewide standards adopted by the Department* of Information Resources.

*Id.* § 2157.063(b).

[22]*Id.* § 2054.051(a).

[23]*Id.* § 2157.065(4).

[24]*Id.* §§ 2157.003(7), .063(b)(5).

[25]*See* 1 T.A.C. § 201.13.

Both the DIR and the GSC take the position that Government Code chapter 2157 precludes the GSC or a state agency from purchasing computers under the Human Resources Code chapter 122 mandatory purchasing program. The agencies identify several ways in which the two statutory schemes are inconsistent. First, chapter 122 vests the council with the responsibility to determine whether a product or service offers the "best value" to a state-agency purchaser, a term chapter 122 (in contrast to chapter 2157) does not define.[26] In addition, chapter 122 vests the GSC with the authority to establish specifications for products and services.[27] A state agency must purchase a product or service that meets GSC specifications and offers the "best value for the state" according to the council's determination.[28] Chapter 2157 works differently. Vendors qualified by the GSC provide information regarding products, services and prices.[29] The GSC or state agency purchasing an automated information system then evaluates that information according to the detailed "best value" criteria set forth in section 2157.003.[30] Whether a system is the "best value" will vary from agency to agency and from purchase to purchase.[31] In addition, the GSC or a state agency must purchase an automated information system through the catalogue purchase procedure, evaluating at least three catalogue proposals, if possible,[32] "unless the commission or state agency determines that the best value may be obtained from another purchase method authorized by this subtitle."[33] The other purchasing methods authorized by that subtitle — subtitle D of title 10, which contains Government Code chapters 2151 through 2177 — do not include the Human Resources Code chapter 122 mandatory purchasing program.

We agree with the conclusion of the GSC and DIR that these two statutory schemes conflict with respect to the purchase of products or services that fall within the definition of "automated information system."[34] Chapter 122 requires a state agency to purchase a product or service included in the program by the council. Chapter 2157, on the other hand, is tailored to give a state agency a

---

[26]Hum. Res. Code § 122.007.

[27]See id. § 122.014. If the GSC has not developed specifications for a particular product, commercial or federal specifications currently in use apply. Id.

[28]Id. § 122.008.

[29]See Gov't Code § 2157.066.

[30]Id. §§ 2157.003, .061.

[31]Under chapter 2157, the "best value" determination takes into account factors relating to an agency's existing infrastructure and employee training. See id. § 2157.003(2), (5); see also id. § 2155.074(b)(6), (7), (8).

[32]Id. § 2157.0611.

[33]Id. § 2157.061.

[34]See id. § 2157.001(1) (defining "automated information system"). Whether a particular product or service falls within the definition of "automated information system" must be resolved by the GSC or state agency.

great deal of flexibility[35] in purchasing an automated information system within certain limits. But the requirements of those limits, which include using a subtitle D purchasing method and determining that both the purchasing method used and the product purchased provide the "best value," are mandatory. A state agency cannot comply with the dictates of both Human Resources Code chapter 122 and Government Code chapter 2157.

The Code Construction Act provides that "[i]f the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail."[36] Chapter 122 governs the purchase of unspecified goods and services whereas chapter 2157 sets forth detailed provisions regarding the purchase of a specific and

---

[35]Indeed, the primary purpose of chapter 2157 appears to be to afford state agencies maximum flexibility in purchasing automated information systems. The bills proposing to amend the act by adding the statutory predecessor to chapter 2157, subchapter B of the Government Code and its accompanying definitions, *see* Gov't Code § 2157.001, were introduced largely in response to a report from the Texas Performance Review, *see* 2 TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, TEXAS PERFORMANCE REVIEW, AGAINST THE GRAIN: HIGH-QUALITY LOW-COST GOVERNMENT FOR TEXAS (1993), in which the comptroller of public accounts proposed numerous cost-saving measures for state government. *See* House Research Organization, Bill Analysis, C.S.S.B. 381, 73d Leg. (1993). As introduced, the bills did not propose to establish the catalogue purchase method; indeed, the comptroller had not suggested that such a procedure be implemented. The bills were amended to add the catalogue purchase method when they were in committee. *See* Hearings on S.B. 381 Before the Senate Comm. on State Affairs, 73d Leg. (Mar. 3, 1993) (statement of Senator Haley, author) (tape available from Senate Staff Services Office); Hearings on H.B. 2626 Before the House Comm. on State Affairs, 73d Leg. (Apr. 5, 1993) (statement of Representative Eckels) (tape available from House Video/Audio Services Office). Senator Haley explained that the amendment would enable state agency personnel directly to purchase computer systems, software, and telecommunications hardware. Hearings on S.B. 381 Before the Senate Comm. on State Affairs (statement of Senator Haley, author) (tape available from Senate Staff Services Office). He further explained that the proposed catalogue purchase method would allow state agencies to avoid the competitive bidding process and instead find the best buys on "computers and all material that goes with computers," such as "software and other telecommunications hardware" in catalogues. *Id.*

[36]Gov't Code § 311.026(b).

very specialized category of goods and services -- automated information systems. We believe chapter 2157 is the more specific statute.[37] Chapter 122 was first enacted in 1975.[38] Chapter 2157 was first enacted in 1993.[39] Although both chapters were amended in the last legislative session in the same legislation, those amendments do not indicate "manifest intent" that chapter 122 prevails over chapter 2157.[40] For these reasons, we conclude that chapter 2157 prevails over chapter 122 to the extent they conflict.

This conclusion does not preclude the GSC and state agencies from purchasing automated information systems from community rehabilitation programs. The GSC or other state agency may do so either through the catalogue purchasing program, if the community rehabilitation program has been qualified as a vendor, or through another purchasing method authorized by subtitle D, if the commission or agency determines that the best value may be obtained by that alternate purchasing method.[41] Furthermore, we do not believe that this conclusion necessarily precludes the council from assisting community rehabilitation programs by including their automated-information goods and services in its purchasing program[42] even though state agencies cannot purchase such goods and services except in compliance with chapter 2157.[43] Finally, we note that while we are sympathetic to the council's desire to provide opportunities for community rehabilitation programs and persons

---

[37]In considering the relationship between chapter 122 and competitive bidding statutes applicable to political subdivisions, this office concluded that chapter 122, a special provision governing purchases from community rehabilitation programs, prevailed over the more general competitive bidding statutes. *See* Attorney General Opinions JM-444 (1986) (political subdivision purchasing generally), JM-385 (1985) (county purchasing). Here, however, we are faced with a different issue – the relationship between chapter 122 and provisions regarding purchases of a unique, complex, and relatively new category of goods and services. In this case, we believe that the statute applicable to these particular goods and services is the more specific.

[38]*See* Act of May 31, 1975, 64th Leg., R.S., ch. 734, 1975 Tex. Gen. Laws 2377, 2377. The legislature reorganized and renamed the council in 1995. *See* Act of May 24, 1995, 74th Leg., R.S., ch. 460, § 1, 1995 Tex. Gen. Laws 3168, 3169. These changes did not significantly affect the substantive provisions related to purchasing.

[39]*See* Act of May 24, 1993, 73d Leg., R.S., ch. 684, §§ 2, 16, 1993 Tex. Gen. Laws 2537, 2538, 2542; Act of May 30, 1993, 73d Leg., R.S., ch. 906, §§ 1.07 - .08, 1993 Tex. Gen. Laws 3811, 3813, 3814; *see also* note 35 *supra*.

[40]*See* Act of May 28, 1997, 75th Leg., R.S., ch. 1206, §§ 18-21 (amending Government Code chapter 2157), 25 (amending Hum. Res. Code section 122.007 to require council to ensure that "products and services offered for sale offer the best value for the state"), 1997 Tex. Gen. Laws 4632, 4642, 4645. We have reviewed the legislative history of this legislation, Senate Bill 1752, and have not found legislative intent relevant to the relationship between chapter 2157 and chapter 122. *See also* note 35 *supra*.

[41]*See* note 44 *infra*.

[42]In providing this kind of assistance, the council should ensure that it does not run afoul of Human Resources Code section 122.012(c), which prohibits the GSC or a state agency from "assum[ing] the marketing or fiscal responsibility for the expense of marketing the products and services of persons with disabilities under the program."

[43]We understand, for example, that the council has placed a personal computer contract on a non-mandatory set-aside.

with disabilities to sell automated-information goods and services to state agencies through its purchasing program, exceptions to the requirements of chapter 2157 must be made by the legislature, not this office.[44]

## S U M M A R Y

Human Resources Code chapter 122 and Government Code chapter 2157 conflict with respect to state agency purchases of automated information systems. Chapter 2157, the more specific provision, prevails to the extent of conflict. The General Services Commission or other state agency is precluded from purchasing an automated information system except in compliance with chapter 2157.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General

---

[44]We have received a letter from a community rehabilitation program that is a qualified information systems vendor. The program urges us to conclude that state agencies are authorized to purchase its products under chapter 122 without complying with the sometimes burdensome requirements associated with chapter 2157 and the other subtitle D purchasing methods. The program asks us, in essence, to amend Government Code section 2157.061 to include the chapter 122 purchasing program as an alternate purchasing method. Only the legislature can amend chapter 2157.